UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 18-31-DLB

MARK LINGAR                                                                                              PLAINTIFF

v.                      **MEMORANDUM OPINION AND ORDER**

**NANCY A. BERRYHILL, Acting Commissioner**
**of the Social Security Administration**                                               DEFENDANT

\*\* \*\* \*\* \*\* \*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, will **affirm** the Commissioner's decision.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On September 24, 2014, Plaintiff Mark Lingar protectively filed for a period of disability and Disability Insurance Benefits (DIB) under Title II. (Tr. 36). This application alleged disability beginning on August 24, 2012.[1] (Tr. 36). The application was initially denied, and again on reconsideration. (Tr. 36). At Plaintiff's request, an administrative hearing was conducted on October 12, 2016 before Administrative Law Judge (ALJ) Tommye C. Mangus. (Tr. 36, 56-77). On February 22, 2017 ALJ Mangus ruled that Plaintiff was not entitled to benefits. (Tr. 33-49). This decision became the final decision

---

[1] Plaintiff Lingar had previously filed a disability action under Title II alleging disability beginning February 1, 2010. That first application was filed on March 14, 2011 and Administrative Law Judge (ALJ) Donald Rising issued an unfavorable decision on August 23, 2012. The Appeals Council upheld ALJ Rising's decision on October 23, 2013, and it became the final decision of the Commissioner.

1

of the Commissioner on December 4, 2017 when the Appeals Council denied Plaintiff's request for review. (Tr. 1-3).

Plaintiff filed the instant action on February 1, 2018 (Doc. # 1) alleging that the Commissioner's decision was not supported by substantial evidence. (Doc. # 8-1 at 1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 8 and 12).

## II.  DISCUSSION

### A.  Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring the plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

When a claimant files an application for benefits under the same title of the Social Security Act as a previously-determined application, the principal of *res judicata* places limits on the evidence that an ALJ evaluating the second application can review. The Sixth Circuit has established that "the principles of res judicata can be applied against the [SSA] Commissioner." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). "When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* Furthermore, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* (citing *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987)); *see also Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598, 600 (6th Cir. 1990) (per curiam) (holding that a second ALJ was precluded from reconsidering whether a plaintiff could perform his past relevant work).

In light of the holding in *Drummond*, the Commissioner issued an Acquiescence Ruling directing states within the Sixth Circuit to follow *Drummond* by applying *res judicata* to a prior assessment of a claimant's residual functional capacity as well as other findings required in the sequential evaluation process for determining disability. This Ruling explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

3

SSAR 98-4(6), 63 Fed. Reg. 29771-01 (Jun. 1, 1998). Accordingly, a prior ALJ's RFC determination must not be altered unless new and material evidence is presented showing that the plaintiff's condition has significantly changed. *See Drummond*, 126 F.3d at 842. The plaintiff bears the burden of showing that his condition has worsened to the point that he is no longer able to perform substantial gainful activity. *Priest v. Soc. Sec. Admin.*, 3 F. App'x 275, 276 (6th Cir. 2001) (citing *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993)).

### B. The ALJ's Determination

To determine disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant has engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe;" Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant on Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). As to the last step, the burden of proof shifts to the Commissioner to identify "jobs in the economy that accommodate [the claimant's] residual functional capacity." *Id.* The ALJ's determination becomes the final decision of the Commissioner if the Appeals Council denies review, as it did here. *See Thacker v. Berryhill*, No. 16-CV-114, 2017 WL 653546, at *1 (E.D. Ky. Feb. 16, 2017); (Tr. 1-3).

Before ALJ Mangus could consider Plaintiff's case, she was first required to consider Plaintiff's previous application for DIB, which had resulted in an unfavorable

decision dated August 23, 2012. (Tr. 36). Based on Social Security Regulations and the doctrine of *res judicata*, the ALJ determined that the previous unfavorable decision was final and binding, but that Lingar's at-issue application presented new material evidence which "indicate[] additional impairments causing some additional limitation in the claimant's residual functional capacity." (Tr. 36-37). As a result, and as required by Sixth Circuit precedent, ALJ Mangus considered this new evidence in determining whether changes to the prior ALJ's findings and conclusions were necessary. *See Drummond*, 126 F.3d at 842.

Here, at Step One, ALJ Mangus found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of the disability, August 24, 2012, through his date last insured, September 30, 2015. (Tr. 39). At Step Two, the ALJ determined that, through the date last insured, the Plaintiff had the following severe impairments: history of left ankle fracture, lumbar spina degenerative disc disease with radiculopathy, third grade literacy level, fibromyalgia, cervical spine degenerative disc disease, bilateral shoulder bursitis, mild bilateral carpal tunnel syndrome, decreased vision, obesity, depression, and anxiety. (Tr. 39-42). At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 42-43).

At Step Four, the ALJ found that Plaintiff possesses the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a). The ALJ found that

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work . . . except that does not require more than occasional bending, kneeling, crouching, climbing stairs or ramps,

> pushing or pulling with the left lower extremity, or bilateral overhead reaching; more than frequent bilateral handling or fingering; or more than 20/50 corrected vision. Mentally, the claimant can understand, remember, and carry out simple work that does not require more than a 3td [*sic*] grade literacy level; more than occasional contact with co-workers, supervisors, or the public; or in which changes occur no more than occasionally and are gradually introduced.

(Tr. 43). Based on this RFC, the ALJ concluded that Plaintiff was, through the date last insured, unable to perform his past relevant work as a sales route driver. (Tr. 47). Thus, the ALJ proceeded to Step Five where he determined that, through the date last insured, there were other jobs that existed in significant numbers in the national economy that the Plaintiff could have performed. (Tr. 48). Accordingly, the ALJ ruled that the Plaintiff was not under a disability, as defined in the Social Security Act. (Tr. 49).

**C.      Analysis**

Plaintiff advances six arguments in the memorandum in support of his Motion for Summary Judgment. (Doc. # 8-1). First, Lingar argues that the ALJ's conclusion that he could "use both his upper extremities to reach overhead and frequently handle and finger" is not supported by substantial evidence. *Id.* at 1; *see also id.* at 4-8. Second, Plaintiff asserts that the ALJ didn't properly consider "the effect of Lingar's non-exertional—mental—impairments on his capacity to tolerate pain." *Id.* Third, Lingar argues that the ALJ's conclusion regarding Plaintiff's pain was not supported by substantial evidence. *Id.* at 2. Fourth, Plaintiff claims that the ALJ erred by failing "to cite specific medical facts to support his rejection of the consultative psychological examiner's findings that Lingar had moderate to moderately severe limitations in concentration, persistence and pace." *Id.* at 2. Fifth, Lingar asserts that the ALJ's decision was in error because ALJ Mangus did not properly consider Plaintiff's impairment of fatigue caused by bradycardia. *Id.* Finally, Plaintiff claims that Appeals Council "failed to comply with the requirement that it notify

Lingar of his substantial right to file a new claim that would have an onset date backdated to the date of filing his request for review . . . [which] resulted in the inability to claim benefits for at least a nine-month period." *Id.* at 3. The Court will consider each argument in turn.

### 1. The ALJ's RFC Determination is Supported by Substantial Evidence.

An RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996). Stated another way, the RFC is "what an individual can still do despite his or her limitations." *Id.* "In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [the ALJ] will consider all of the medical and nonmedical evidence" in the record. 20 C.F.R. § 404.1545(e). The ALJ is only required to incorporate those limitations that he or she finds credible in the RFC assessment. *Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). A reviewing court gives "the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity . . . of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476.

#### a. Use of Upper Extremities

Plaintiff argues that the ALJ did not properly take into account all of Lingar's physical impairments when determining in the RFC that he could undertake sedentary work that does not require "more than occasional . . . bilateral overhead reaching . . . [and]
7

more than frequent bilateral handling or fingering." (Tr. 43); (Doc. # 8-1 at 4-8). Further, Plaintiff argues that the medical evidence documenting Lingar's impairments does not support the ALJ's conclusion regarding Lingar's use of his upper extremities. (Doc. # 8-1 at 4-8). Lingar's argument is misguided.

In undertaking the RFC determination, the ALJ did consider the physical, upper extremity limitations noted by Lingar. Specifically, the ALJ found in Step Three that "the claimant's shoulder bursitis, fibromyalgia, cervical spine degenerative disc disease, and mild bilateral carpal tunnel syndrome all more than minimally impact the claimant's ability to work, but are not entirely disabling." (Tr. 40). More specifically, the ALJ noted that these diagnoses "all caused the undersigned to add additional limitation on the claimant's ability to reach, handle, and finger" in addition to the "claimant's already restrictive sedentary residual functional capacity." (Tr. 45). In light of the evidence presented by Lingar regarding his upper-body impairments, ALJ Mangus adopted an RFC more restrictive than the one affirmed by the state agency medical consultant. (Tr. 46).

The ALJ's conclusion that Lingar's impairments did not completely preclude his ability to work with his hands and arms and that he could undertake sedentary work with additional limitations is supported by evidence in the record. *See e.g.* (Tr. 66-67) (Lingar testifying that he was prescribed wrist braces, presumably to ease his carpal tunnel symptoms); (Tr. 1319) (noting on August 31, 2016 that Lingar "denies hand pain . . . denies hand weakness . . . [and] denies arm pain); (Tr. 1314) (noting the same on June 3, 2016). Accordingly, a reasonable person could conclude, based on the record evidence, that Lingar could undertake a job that requires use of his hands and arms albeit with some limitations.

8

While the record includes other evidence that Lingar had some impairments with regard to his ability to use his upper extremities, *see e.g.* (Tr. 68) (testifying that his hand shaking is a result of his anxiety and panic disorder); (Tr. 273) (explaining that his "hands tremble and draw"); (Tr. 364) (noting that Lingar has spine and shoulder pain); (Tr. 1322) (noting that Plaintiff suffered from hand weakness as a result of carpal tunnel), the Court must still uphold the ALJ's decision as it is supported by substantial evidence. It is not the job of the court to "re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). Rather, the Court must determine if there is substantial evidence to support the ALJ's decision and uphold that decision even if "substantial evidence also would have supported a finding other than the one the ALJ made." *Smith*, 99 F.3d at 781-82. As the Court has found that substantial evidence supports the ALJ's conclusion regarding Lingar's use of upper extremities, the decision will not be overturned on these grounds.

### b. Pain

Plaintiff also argues that the ALJ did not consider Lingar's "non-exertional mental impairments" like depression and anxiety, when determining the extent of his pain and his ability to tolerate it. (Doc. # 8-1 at 8-9). Additionally, he alleges that the ALJ's determination of credibility is not supported by substantial evidence because Lingar's "complaints [of pain] are consistent with the medical findings" and "the ALJ points to no valid reasons to disbelieve the intensity, persistence and limiting effects of his impairments." *Id.* at 9-10.

In determining an RFC, the ALJ must evaluate the claimant's complaints of pain, and, in doing so, the ALJ may consider the credibility of the claimant. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008). "[A]n ALJ's assessment of credibility

must be supported by substantial evidence" and an ALJ's assessment of credibility is "to be accorded great weight and deference." *Walter v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *see also Jones*, 336 F.3d at 474. Without more, a claimant's own subjective complaints of pain will not establish that an individual is disabled. *Amir v. Comm'r of Soc. Sec.*, 705 F. App'x 443, 449 (6th Cir. 2017). The ALJ undertakes a two-prong assessment when evaluating a claimant's complaints of pain—first the ALJ determines if there is objective evidence of an underlying condition which could cause pain, and then the ALJ determines if "objective medical evidence confirms the severity of the alleged pain arising from the condition, or . . . the objectively established medical condition is of such severity that it can reasonably be expected to produce the disabling pain." *Vance*, 260 F. App'x at 806 (citing *Duncan v. Sec. of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).

ALJ Mangus, in undertaking this assessment, concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 44). This conclusion is supported by substantial evidence.

Here, the ALJ considered Lingar's testimony regarding the pain he suffers in conjunction with other record evidence. While Lingar suffers from pain that limits his ability to function, as well as mental impairments that may further limit his ability to manage pain, Plaintiff's own admissions about his abilities suggest that his pain is not completely debilitating. For example, Lingar, both in his oral testimony and in the function reports he completed, notes that, despite his pain, he can undertake basic activities like

driving, preparing meals, shopping, and caring for his son, among other things. (Tr. 62, 243, 247-250, 268, 270). The participation in such household activities may be considered by the ALJ "in evaluating complaints of disabling pain or other symptoms." *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993); *see also Van Winkle v. Comm'r of Soc. Sec.*, 29 F. App'x 353, 357-58 (6th Cir. 2002).

Further, evidence in the record suggests that Plaintiff's pain, as well as his mental health symptoms which may make the pain more difficult to manage, is mitigated through medication and medical devices. *See* (Tr. 65-66) (testifying that his prescribed medication helps ease his pain some, and also helps ease and anxiety and depression); *see also* (Tr. 241-42, 276-77, 409) (indicating that medication and a brace helps minimize pain). Medication and measures used to relieve pain are also appropriately considered in an evaluation of a claimant's pain. *Van Winkle*, 29 F. App'x at 357. Additionally, medical records indicate that some of Lingar's pain is only moderate. *See* (Tr. 361) (indicating only moderate shoulder and back pain on March 4, 2014); (Tr. 363) (noting on January 28, 2014 that "the pain is doing worse" but is still only listed as moderate).

Based on these admissions and evidence, a reasonable person could conclude that Lingar's pain is not so debilitating that he should be deemed disabled; thus ALJ Mangus' determination regarding claimant's pain is supported by substantial evidence. *Cutlip*, 25 F.3d at 286. While there is evidence in the record that suggests Lingar may suffer from debilitating pain, *see e.g.* (Tr. 381) (indicating that his "pain [is] up to 9/10 at times"), evidence favoring the Plaintiff's claim does not require the Court to reverse the ALJ's decision. *Listenbee*, 846 F2d at 349. Rather, as it is the job of a reviewing Court to uphold the decision of the ALJ so long as it is supported by substantial evidence even if the Court would have come to a different conclusion, the Court here must reaffirm the

11

ALJ's conclusion. *Her*, 203 F.3d at 389-90.

### c. Concentration

Lingar argues that there is inconsistent evidence regarding his ability to concentrate and that the ALJ's finding of a moderate impairment, rather than a moderately severe impairment, is not supported by substantial evidence. (Doc. # 8-1 at 11). Plaintiff's argument is, again, meritless. Lingar is correct that there is inconsistent evidence regarding his ability to concentrate. *See e.g.* (Tr. 104) (finding a mild deficiency regarding concentration); (Tr. 130, 133-34) (finding moderate limitations as to Plaintiff's ability to concentrate); (Tr. 228) (noting that Lingar appears to have no difficulty regarding concentration), (Tr. 721 noting that "[h]e seemed to have a moderate to moderately severe deficiency in his ability to maintain sustained concentration and persistence in the completion of tasks in a normal amount of time"). However, in determining a claimant's RFC, the ALJ must consider the record as a whole.

An ALJ's conclusion must be upheld by a court if a reasonable person could have reached the same conclusion. *Cutlip*, 25 F.3d at 286. Based on the conflicting evidence—some indicating a more severe impairment, some indicating a moderate impairment, and some indicating a minor impairment—a reasonable person could draw the conclusion that Lingar's ability to concentrate is moderately impaired. It is not a court's job to re-weigh evidence and determine what conclusion the Court would reach. *DeLong*, 748 F.3d at 726. As a reasonable person could have reached the same conclusion based on the record evidence, the Court must uphold the ALJ's determination.

### d. Fatigue

Finally, Plaintiff asserts that the ALJ does not address Lingar's fatigue resulting from bradycardia. Thus, he argues that the finding that Lingar can work a normal 40-hour

work week is not supported by substantial evidence. Again, Plaintiff's assertion is in error.

Here, the ALJ did not determine Lingar's bradycardia and resulting symptoms to be a severe impairment in Step Two; rather, the ALJ found that the condition did "not more than minimally impact the claimant's ability to work." (Tr. 41). The record indicates that in August 2016 Lingar had a pacemaker implanted "due to his continued symptomatology with dizziness and excessive fatigue" as a result of symptomatic bradycardia. (Tr. 1121-22). No further medial records, however, appear to have been submitted regarding his fatigue and bradycardia, and "[h]is cardiologist did not indicate any serious restrictions following the surgery." (Tr. 41). Further, Lingar indicated that the pacemaker was working but admitted that he "still stay[s] tired." (Tr. 66). Nothing from Lingar's testimony, however, suggests a continued level of excessive fatigue. Further, a reasonable person would presume that the pacemaker procedure, undertaken to reduce his fatigue symptoms, would have done just that. Thus, ALJ Mangus' conclusion that the bradycardia and resulting fatigue is not severe due to recent medical interventions to manage it is supported by substantial evidence.

### 2. *Appeals Council Error*

Finally, Plaintiff appears to argue that the failure of the Appeals Council to notify Lingar of his "right to file a new claim that would have an onset date backdated to the date of filing his request for review" is reversible error. (Doc. # 8-1 at 3-4). While Lingar is correct that 20 C.F.R. § 404.970(c) requires that the Appeals Council include this notice in its decision, he cites no applicable law suggesting that this type of failure to notify amounts to reversible error.[2] (Doc. # 8-1 at 3-4).

---

[2] The only case cited by Plaintiff, *Wilson v. Comm'r of Soc. Sec.*, discusses remanding cases when the Commissioner, through the ALJ, has "failed to articulate 'good reasons' for not crediting the opinion of

Additionally, Plaintiff clearly was aware of his right to file a new application based on new medical evidence because the application at issue in this case is just that—a second application including new medical evidence.

III. **CONCLUSION**

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act was supported by substantial evidence.

Accordingly, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 8) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 12) is hereby **GRANTED**; and

(4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 5th day of February, 2019.

Signed By:
*David L. Bunning* DB
United States District Judge

---

a treating source" as required by the regulations; the court in *Wilson* recognizes that procedural requirement as a substantial right. 378 F.3d 541. Such an analytical error is materially different from a failure to include proper language of notice as required by procedural regulations. While Lingar labels the requirement to notify a substantial right, he points to no cases which support his assertion.